**Reynaldo GARCIA, Plaintiff,**

v.

**BURNUP & SIMS, INC., Defendant.**

**Civ. A. No. 1990/35.**

United States District Court,
D. Virgin Islands,
St. Croix Division.

Feb. 25, 1992.

Joel Holt, Christiansted, St. Croix, V.I., for plaintiff.

Wilfredo Geigel, Christiansted, St. Croix, V.I., for defendant.

### MEMORANDUM

RAYMOND J. BRODERICK, District Judge, Sitting by Designation.

The defendant, Burnup & Sims, Inc., has filed a "Motion for Judgment as a Matter of Law and/or for a New Trial, or, in the Alternative, for Remittitur" after a three-day jury trial in this negligence action. The jury returned a verdict in favor of the

plaintiff, Reynaldo Garcia, and against the defendant, assessing damages in the amount of $212,200.00. In its motion, the defendant contends that (1) the jury erred in not ascribing any negligence to the plaintiff, (2) the jury's verdict was against the weight of the evidence, and (3) the jury's award was grossly excessive and not rationally related to the evidence adduced at trial.

The circumstances leading to the plaintiff's injuries began in the wake of Hurricane Hugo. The storm devastated St. Croix, and in the process tore down most of the utility poles and electrical wiring on the island, including television cable. The St. Croix Cable Television Company, (hereafter "St. Croix Cable"), like the rest of St. Croix, began the long road to recovery from Hugo almost immediately after the storm subsided. In order to get back in business, St. Croix Cable had to reinstall almost all of its cable television hook-ups. The company devised an incentive program for its installers, paying them $20.00 per installation instead of the hourly rate in effect prior to Hugo.

The plaintiff, Reynaldo Garcia, was employed by St. Croix Cable as an installer on January 30, 1990, when he received a call from his dispatcher requesting that he assist another installer, Eustace Crump, in the Golden Rock area. Mr. Garcia contacted Mr. Crump and arranged to meet him after lunch to install the cable. Mr. Crump required assistance with the Golden Rock installation because the primary utility pole from which he had to run the customer's cable was across the street from the customer's utility pole and home. This circumstance required that traffic be stopped a short time while the cable was strung over the road.

When Mr. Garcia arrived, Mr. Crump had already parked his truck in front of the customer's utility pole on the same side of the street as the customer's pole and home. Mr. Garcia parked his truck across the street from Mr. Crump's, in front of the primary utility pole. Both men activated the flashing hazard lights on their trucks, and placed orange traffic cones around their trucks and along the white line in the middle of the road. These precautions were taken in accordance with the training Mr. Garcia received from his employer, St. Croix Cable. A representative of St. Croix Cable testified that the job was done in accordance with the company's safety standards and that hundreds of jobs had been safely completed using those same precautions. When they were ready to string the cable, Mr. Crump climbed the customer's utility pole while Mr. Garcia stopped all traffic. Mr. Garcia then prepared to hand the cable up to Mr. Crump. This was to be accomplished through use of a long, yellow staff with a small fork at one end to hold the cable. After Mr. Garcia strung the cable through the fork on the top of the staff, both he and Mr. Crump noticed a truck approaching from a direction from which no vehicles had previously been seen. Mr. Garcia stepped out into the street to signal the approaching truck to stop. Holding the cable and the staff in one hand, Mr. Garcia raised his other hand to indicate to the driver of the truck to stop.

The truck, owned by the defendant, Burnup & Sims, and driven by a Burnup & Sims employee, Alberto Jesus Ayala, did not stop. Instead, it proceeded past Mr. Garcia and under the cable, which was strung across the road in preparation for installation. The cable snagged on a "boom" on the truck and jerked violently, wrapping around Mr. Garcia, lifting him into the air, and then dragging him into and along the road surface. A "boom" is retractable, elevating work platform that was attached to the rear of the Burnup & Sims truck. In its retracted position, the front of the boom faces forward over the cab of the truck at a height of approximately ten feet. As the truck continued on, it dragged Mr. Garcia an estimated twenty-five feet along the road. Hearing the cries of Mr. Garcia and Mr. Crump, Mr. Ayala, the driver of the Burnup & Sims truck, stopped. The passenger, Rudy Cook, also an employee of Burnup & Sims, got out of the truck and unsnagged the cable from the boom. He then got back into the truck, which drove off before ei-

ther Mr. Crump or Mr. Garcia could reach it.

As a result of the accident, Mr. Garcia received (1) a deep abrasion of the left "flank" resulting from contact with the cable which has developed into a scar extending around most of his mid-section, (2) costochondritis of the sternal and left rib cage, (3) a cervical sprain, and (4) dorsolumbar myositis of the lower back. He sought and received medical attention from several physicians and a rehabilitation therapist for the injuries. These injuries have caused Mr. Garcia pain, suffering, and discomfort from the time of the accident up through the present. He was unable to return to work for a period of three months and thereafter has been limited to light duty work only. Mr. Garcia's pain, discomfort, and limitations resulting from the accident are expected to continue for the rest of his life expectancy, thirty-nine and one half years.

The jury returned a verdict, responding to interrogatories prepared by the Court, in which it found (1) that the defendant, Burnup & Sims, was negligent and that its negligence was a proximate cause of the accident, (2) that the plaintiff, Reynaldo Garcia, was not negligent, and (3) that the plaintiff sustained damages in the amount of $212,200.00.

Defendant first contends that the jury erred in failing to ascribe any negligence to the plaintiff, Mr. Garcia. In rendering its verdict, the jury answered the following interrogatories prepared by the Court to aid in its deliberations:

*QUESTION NO. 1:* Do you find from a preponderance of the evidence that the defendant, Burnup & Sims, Inc., was negligent and that its negligence was the proximate cause of the accident?
YES___ NO___
*QUESTION NO. 2:* Do you find from a preponderance of the evidence that the plaintiff, Reynaldo Garcia, was also negligent and that his negligence was also a proximate cause of the accident?
YES___ NO___

The jury answered Question No. 1 "YES" and Question No. 2 "NO", finding that the defendant was negligent, that the defendant's negligence was a proximate cause of the accident, and that the plaintiff was not negligent. Question No. 3 addressed the percentage of fault apportionable to each party. If the jury found, as it did, that the plaintiff was not negligent, then they were instructed to skip over Question No. 3 and proceed directly to Question No. 4, addressing damages.

■ Sufficient evidence was presented at trial to support the jury's conclusion that Mr. Garcia was not negligent. As pointed out above, Mr. Garcia and his co-worker placed their trucks on either side of the road by the utility poles and turned their flashing hazard lights on. Six orange traffic cones were placed around the trucks and in the road. All traffic was stopped prior to beginning work. When in the course of the work, the Burnup & Sims truck approached, the men paused in their work and Mr. Garcia stood in the road holding a large yellow pole, signaling the driver to stop with his free hand. These precautions were taken in accordance with the training Mr. Garcia received from his employer, St. Croix cable. A representative of St. Croix cable testified that the job was done in accordance with the company's safety standards and that hundreds of jobs had been safely completed using those same precautions. The foregoing evidence provided the jury with a more than sufficient basis for its finding that Mr. Garcia was not contributorily negligent.

■ Defendant next claims that the jury's verdict was against the weight of the evidence, and that the jury's award was grossly excessive and not rationally related to the evidence presented at trial. New trials on the basis that the verdict was against the clear weight of the evidence "are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1353 (3d Cir.1991). The Court finds that the jury's verdict, both its finding of liability on the part of Burnup & Sims and its award to

plaintiff in the amount of $212,200.00, was fully supported by the evidence presented at trial and was not against the weight of the evidence. The evidence showed that Mr. Garcia (1) required treatment by several doctors and a rehabilitation therapist, (2) experienced pain, suffering, scarring, and discomfort, which is expected to continue for the remainder of his life expectancy of thirty-nine and one half years, (3) was forced to miss approximately three months of work, (4) is now limited in the type of occupation he can pursue, specifically, he cannot do heavy duty work, and (5) is limited in the enjoyment of his personal life. Though the amount awarded by the jury may be higher than the Court might have awarded were it the trier of fact, it is not so excessive as to warrant substitution of the judgment of the Court for that of the jury. The jury's verdict does not work a miscarriage of justice, nor does it shock this Court's conscience.

Accordingly, defendant's "Motion for Judgment as a Matter of Law and/or for a New Trial, or, in the Alternative, for Remittitur" will be denied.